1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - -   X

UNITED STATES OF AMERICA,      :     12 CR 264

                               :

      -against-                :
                                     United States Courthouse
                                     Brooklyn, New York
ROBERT SCALZA,                 :

                                     June 27, 2014
            Defendant.         :     11:00 o'clock a.m.

- - - - - - - - - - - -   X


                TRANSCRIPT OF SENTENCING
            BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
                UNITED STATES DISTRICT JUDGE


APPEARANCES:


For the Government:        LORETTA E. LYNCH
                           United States Attorney
                           BY: JACQUELYN KASULIS
                           Assistant United States Attorney
                           271 Cadman Plaza East
                           Brooklyn, New York


For the Defendant:         MICHAEL ROSEN, ESQ.


Court Reporter:            Gene Rudolph
                           225 Cadman Plaza East
                           Brooklyn, New York
                           (718) 613-2538


Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

GR      OCR      CM      CRR      CSR

2

1          THE CLERK:  United States versus Scalza, criminal
2     cause for sentencing.
3          Appearances, please.
4          MS. KASULIS:  Jacqueline Kasulis for the United
5     States.
6          Good morning, Your Honor.
7          THE COURT:  Good morning.
8          MR. ROSEN:  Michael Rosen for Mr. Scalza.
9          Good morning, Your Honor.
10          THE COURT:  Good morning.
11          THE DEFENDANT:  Robert Scalza.
12          Good morning, Your Honor.
13          THE COURT:  Good morning, sir.
14          All right.  This is a sentencing for Robert Scalza.
15          Mr. Scalza, are you satisfied with the assistance
16     that your attorney has given you thus far in this matter?
17          THE DEFENDANT:  Yes, Your Honor.
18          THE COURT:  Okay.  I have the following materials
19     that I have reviewed for purposes of this sentencing.
20          There is a presentence investigation report dated
21     April 25, 2014.  Mr. Rosen, have you shared that with your
22     client?
23          MR. ROSEN:  Yes, I have.
24          THE COURT:  Have you answered any and all questions
25     that he had about it?

GR     OCR     CM     CRR     CSR

3

1          MR. ROSEN:  Yes, Your Honor.

2          THE COURT:  Mr. Scalza, do you understand the

3   contents of this report?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Very well.

6          Then there is a submission from the defense dated

7   June 17, 2014, which sets forth certain objections to the

8   presentence report, and also in the nature of a sentencing

9   memorandum.  In addition, there are a number of letters from

10  members of the defendant's family and colleagues, business

11  colleagues, and personal friends, that I have also reviewed.

12         Has the government seen that?

13         MS. KASULIS:  Yes.

14         THE COURT:  Okay.

15         MR. ROSEN:  Judge Garaufis, yesterday there was a

16  document filed, 218, a one-page document filed on ECF, just

17  briefly responding to the government.

18         THE COURT:  I have your letter of June 26th.  Is

19  that what it is?

20         MR. ROSEN:  Yes, sir.

21         THE COURT:  Yes.

22         MR. ROSEN:  Okay.

23         THE COURT:  Responding to the government's letter,

24  which you acknowledge receipt of of June 25th.

25         MR. ROSEN:  Yes, sir.

4

1          THE COURT:  All right.  I have read those two

2    documents as well.  I don't think there is any response from

3    the Probation Department as to your objections to the PSR.

4          MR. ROSEN:  I think there are, Judge.  There is an

5    addendum.

6          THE COURT:  I don't have it.

7          MS. KASULIS:  It is dated May 15, 2014.  I can hand

8    it up to Your Honor.

9          MR. ROSEN:  May 15, 2014.

10          THE COURT:  Let me just take a quick look at it.

11          MR. ROSEN:  Okay.

12          (Pause.)

13          THE COURT:  All right.  I have read the addendum to

14    the presentence report dated May 15, 2014.  I just point out

15    that the Court is not considering an upward departure.  So

16    question of paragraphs 20 through 22 which could serve as

17    foundation for an upward departure according to the addendum

18    are not relevant to the computation of the sentence.

19    Certainly, they are not relevant to the computation of the

20    guideline.

21          Is that basically correct?

22          MR. ROSEN:  Yes, sir.

23          MS. KASULIS:  Yes, Your Honor.

24          THE COURT:  All right.  As to these other changes,

25    is there anything else you would like to say about them?

1          MR. ROSEN:  I think I have one thing to say about

2    paragraph 34, and that is the two-level adjustment, upward

3    adjustment that the Probation Department ascribed to the base

4    offense level of 18, which the government and the defense had

5    agreed was the appropriate base level of 18.  I think the

6    government stated in its letter at page two that it does not

7    intend to present evidence or otherwise argue at sentencing in

8    support of a two-level enhancement for implied threat of

9    bodily harm.

10         That would take care of all the objections.  The

11   other objection that I think was made was a mathematical

12   estimate of some monthly payments of Mr. Scalza.

13         THE COURT:  It was an annual payment, not a monthly

14   payment.  It's computed on an annual basis but referenced on a

15   monthly basis.  I understand that that's just an accountant's

16   error, basically.

17         MR. ROSEN:  We have no other objections to put

18   before you.

19         THE COURT:  The Court wouldn't predicate a fine on

20   that kind of a mistake, in any event.

21         MR. ROSEN:  Okay.  But there are no other

22   objections.

23         THE COURT:  The government's calculation of the

24   computation of the guideline then, which does not include that

25   two-level enhancement, is the total offense level of ten,

6

1    criminal history category of one.  Is that basically correct?

2              MS. KASULIS:  That is correct, Your Honor.

3              THE COURT:  All right.

4              MR. ROSEN:  Yes.

5              MS. KASULIS:  That includes the two-level global

6    plea disposition reduction because Mr. Scalza and his

7    codefendants did plead in this case by the date set forth in

8    the plea agreements.

9              THE COURT:  Let's just go over the guideline

10   calculation in the presentence report.  The base offense level

11   they have is a 20; right?

12             MR. ROSEN:  Yes.

13             MS. KASULIS:  Correct.

14             THE COURT:  Less four levels for minimal role,

15   right?

16             MR. ROSEN:  Yes.

17             THE COURT:  That brings us to a 16.

18             Less three levels for acceptance, right?

19             MS. KASULIS:  Correct.

20             THE COURT:  Brings us to a 13.

21             And then less what?

22             MS. KASULIS:  Two points for the global disposition,

23   Your Honor.

24             THE COURT:  Brings us to eleven.  And then that's

25   it?

7

1        MS. KASULIS:  That's the calculation by Probation,

2    yes.

3        THE COURT:  Then your calculation though?

4        MS. KASULIS:  Our calculation is one point

5    different.  It starts with an 18 instead of a 20.  Because we

6    are not including the two-point enhancement for threat of

7    injury.

8        THE COURT:  Right.

9        MS. KASULIS:  Minus four, which we are all in

10   agreement applies.

11       THE COURT:  Right.

12       MS. KASULIS:  So that's 14.  And then minus two for

13   acceptance of responsibility, which would be 12.

14       MR. ROSEN:  Right.

15       MS. KASULIS:  Because the base offense level prior

16   to applying the acceptance of responsibility reductions is

17   below 16, then he doesn't get the additional --

18        THE COURT:  It is the third point?

19       MS. KASULIS:  That's the reason for the ultimate one

20   point difference and two-point reduction for global

21   disposition.  So we end up with a ten.

22       THE COURT:  Right.  The Court agrees with that,

23   assuming that you agree with that.

24       MR. ROSEN:  I do, sir.

25       THE COURT:  All right.  The Probation Department is

8

1  directed to revise the computation of the offense level for

2  Count Twelve, extortion conspiracy, in such a way as described

3  by the government just now so that the adjusted total offense

4  level is a ten.  The defendant is in criminal history

5  Category 1, and the range of incarceration under the

6  guidelines is six to 12 months in the custody of the Attorney

7  General.

8          Is that agreeable to everyone?

9          MS. KASULIS:  Yes, sir.

10         MR. ROSEN:  Yes.

11         That comes out, as I have calculated it, to what

12  they call Zone B.

13         THE COURT:  Zone B, yes.

14         MR. ROSEN:  All right.

15         THE COURT:  I am just saying, it's six to 12 months,

16  which is in Zone B.

17         MR. ROSEN:  Okay.

18         THE COURT:  Okay.  We have resolved that.

19         The next step then is to discuss the imposition of a

20  sentence that is sufficient but not greater than that

21  necessary to fulfill the purposes of sentencing under 18

22  United States Code Section 3553(a).  One of the factors that

23  is taken into account is the guideline calculation, but there

24  are many other factors as well, and for that reason it is

25  important to hear from counsel on that subject.  Mr. Rosen.

1          MR. ROSEN:  Thank you, Judge.

2          Your Honor, one of the elements or one of the

3     factors, the seven factors in 3553(a) is the history and

4     characteristics of a defendant, along with the seriousness of

5     the crime, the need for deterrence, respect for the law, and I

6     have taken all of that into consideration in making my

7     argument to Your Honor, that an appropriate sentence and a

8     fair sentence, in my opinion, would be a sentence of

9     probation, which is permissible under Zone B.

10          Mr. Scalza will be 69 in August.  He is married to

11     Patricia, who is here in court, 45 years.  They have two adult

12     children, one of whom is here today, Tara, and Dana, who gave

13     birth this week to his third grandchild, and, Judge, thank you

14     for allowing him and Mrs. Scalza to travel to Baltimore to

15     attend the birth of this grandchild.

16          This felony conviction, Judge Garaufis, will be a

17     permanent stain on this man's reputation, on this man's name

18     for the rest of his life.  I will tell you that he is a very

19     sad man because of that, and to use the word broken may be a

20     little bit of hyperbole but basically he is, and in my 50

21     blessed years to be in this Court, I never dealt with a

22     defendant who that is more remorseful and contrite for his

23     conduct and I think that this has been a very painful and

24     extraordinarily excruciating experience.

25          But, additionally, this conviction results in the

1    loss of his employment and union position.  He has been a

2    union fellow for 40 years.  It is very painful punishment for

3    him, and he has worked constantly since he graduated high

4    school.  I think there wasn't a year that I saw a gap in his

5    employment from high school until today.

6              I did want to raise the one point in the plea

7    agreement where, you know, under the Section 504 of the labor

8    Management Reporting and Disclosure Act, he will be barred for

9    13 years for any employment or officership in a union.  The

10   law permits, however, that the sentencing judge can reduce

11   that 13 years but at least has to impose a three-year bar.  I

12   am going to ask Your Honor to, most respectfully, consider

13   that three-year figure and the government does not oppose that

14   request.

15             THE COURT:  Is that right?

16             MS. KASULIS:  That is correct.  It's contained in

17   the plea agreement, Your Honor.

18             THE COURT:  All right.  The Court is going to grant

19   that application, that the bar should be the statutory minimum

20   of three years.

21             MR. ROSEN:  Okay.

22             MS. KASULIS:  Your Honor, just to make the record,

23   the government did submit to counsel this morning a letter

24   from the Department of Labor in light of Mr. Scalza's

25   sentencing today that he is barred from any union positions

1   including being a consultant.  I think he's acting in that

2   capacity right now.

3            THE COURT:  Until he's sentenced?

4            MS. KASULIS:  Correct.  So he was acting as a

5   consultant until today.

6            THE COURT:  We know that.  That was disclosed, was

7   it not?

8            MS. KASULIS:  It was, absolutely.

9            So the Department of Labor asked me to serve a

10  letter on Mr. Scalza telling him he is now barred from further

11  union activity for the time period that Your Honor sets forth

12  in today's sentencing.

13           THE COURT:  Okay.

14           Go ahead.  You may continue, Mr. Rosen.

15           MR. ROSEN:  Thank you.

16           We do want to express additional appreciation for

17  Your Honor allowing him to stay in that limited role until

18  today.

19           Judge, a 69-year old offender stands before you,

20  criminal history one, no criminal history points even, and was

21  accorded a minimal role in this offense.  The plea agreement

22  does that.  The presentence report does that. That is the

23  beginning of the picture of this man that I am trying to

24  convey to you.  But the letters that I did submit to Your

25  Honor echo a consistent and repetitive theme of a man whose

1   traits, history, characteristics, and whole being seem to be

2   one that is dedicated to his family, devoted, a lifetime

3   devotion to his union, unionism.  And I know what that is

4   because my dad was a labor man for many years and I know that

5   you can get really caught up in that sphere, if it's inside.

6   I think one of the letter writers called it not a job of his

7   but a passion, and I think that's what it was.  Also, the

8   letters that I submitted show his community involvement, his

9   charitable endeavors.  He is a good man who did something

10  wrong and that's just the picture.

11          The people that worked for him, with him, in the

12  union, submitted letters to Your Honor, again describing him

13  as hard working, dedicated and decent, which is a quality that

14  I champion, having gotten to know him so well at this time.

15          An employer from a shop, a Mr. Breen, the attorney

16  for the Welfare Fund, I believe, Mr. Iacarrino (ph), also

17  championed his dedication and his strong work ethic.  A

18  neighbor of 35 years, Doctor Jack Soterakis (ph), refers to

19  Mr. Scalza as a caring, loyal and trusted friend, who is

20  involved in their community as well. But he also notes, as I

21  think I mentioned to Your Honor, Mr. Scalza's shame and

22  contrition for his conduct here, and this is somebody who has

23  been a neighbor of his for 35 years.

24          Finally, Mr. Scalza's family relates a loving and

25  nurturing relationship with him that has endured throughout

1    the years.  His brother Perry is here, daughter Tara is here,

2    and I think their letters -- I can't say more than their

3    letters say.

4           So in arguing for a non-jail sentence, I usually

5    begin to articulate the concept that came out of Gall, that a

6    sentence of probation is not a slap on the wrist but a

7    substantial and significant deprivation of freedom and

8    liberty, with all its conditions, with all its

9    responsibilities, and all its time sensitive obligations.

10   This is a significant sentence.

11          I am sorry, because I do this almost all the time,

12   and I have to refer to post-Booker sentencing and that is

13   Judge Dearie's comment, I think it was made to one of the

14   media after Booker was decided and he heralded it and he

15   almost rejoiced in saying, "It at least returned judging to

16   judges."  To me, that's -- I know there has been a lot of

17   amazing Supreme Court decisions, even as late as yesterday,

18   but I thought his reaction to that decision was just right to

19   the point.  It solidified my view that I have held all these

20   years in this Court that the imposition of sentencing should

21   be sufficient but not, as Your Honor says, greater than

22   necessary to achieve the purposes of 3553(a).  That includes

23   individualized sentencing.

24          I mean, this is a specific human being, with a

25   specific background, who, yes, pled to a federal violation.

1   There is no question about it.  We don't minimize that.  But

2   the concept of the punishment fitting his actions, the

3   individualized sentencing, and a sentence that is sufficient

4   but not greater than necessary.

5           Justice Sotomayor in Pepper, which I also cited to

6   you in my letter, took the viewpoint that 3553(a) judges as

7   trying to elicit the fact that a Court should try in an

8   appropriate case to impose the least onerous sentence that

9   comports with the principles or the goals of sentencing.

10          I noticed one thing, that the opinion did even

11  indicate that at times, in an appropriate case, the

12  characteristics -- nature and Characteristics of a defendant

13  could be as persuasive as the offense itself.  I think that

14  sort of sets the table of why I am asking Your Honor to

15  consider a non-jail sentence.

16          Yes, he is going to be barred from his passion, and

17  yes, he'll have this lifetime mantle of a felony conviction

18  and a stain on his name.  Yes, a man with minimal

19  participation and zero criminal history points is a worthy

20  candidate to be considered for that kind of relieve.

21          I think that kind of a sentence, Judge Garaufis, for

22  Mr. Scalza, with his age and his decent background, does show

23  respect for the law because the law is really a two-way

24  street, Your Honor please.  When there is a worthy candidate

25  for some relief, that's part of the law.  I mean, probation is

1   part of the law.  A sentence of probation is part of what can

2   happen under Zone B.  So that's respect for the law as well

3   and deals with the seriousness of the offense.

4            And as a deterrence to others, Judge Garaufis, I

5   have to think that anybody else thinking of doing what

6   happened here, actually, what Mr. Scalza personally was

7   involved with, who is not a young guy, who is going to lose

8   his job, who is going to face perhaps hopefully years of

9   supervision and conditions, has to be deterred by that kind of

10  a sentence.  Certainly, Mr. Scalza, in my humble opinion,

11  doesn't need any individual deterrence.  I can't imagine that

12  he'll ever be in this kind of a situation again.

13           For all those reasons I ask Your Honor to consider

14  the imposition of a non-jail sentence on Mr. Scalza.

15           THE COURT:  Thank you.

16           Ms. Kasulis.

17           MS. KASULIS:  Yes, Your Honor.  I will keep my

18  comments brief.

19           We were engaged in extensive plea negotiations in

20  this case.  I think we are in agreement that a sentence

21  somewhere within the guidelines range of six to 12 months is

22  appropriate considering the facts and circumstances.  Because

23  it is a Zone B offense, that sentence can be comprised of a

24  number of things, obviously.  It can be a combination of

25  probation, with some sort of home detention, component of that

1    sentence.  It can include a term of imprisonment.  I think we

2    are in agreement that some -- some term of -- some sentence

3    that's within the six to 12-month range is appropriate here.

4         The government has no doubt that Mr. Scalza is an

5    excellent husband and father and friend and that he has done a

6    lot for the membership of his union in the time that he has

7    functioned as a union official.  But what the government finds

8    disturbing is Mr. Scalza's association with organized crime,

9    in particular, his association with a codefendant, Conrad

10   Ianniello, who is a powerful captain, who has no business

11   being involved in the affairs of Mr. Scalza's union.

12        I think it is concerning that organized crime

13   continues to have an association and continues to have a grip

14   on unions.  I have been prosecuting organized crime cases for

15   over five years and far too many of the cases I have

16   prosecuted have involved unions.  Unfortunately, from all

17   different kinds of unions, from carpenters, to waterfront, to

18   unions along the lines of Mr. Scalza's union.

19        This is one of the last areas where organized crime

20   still really exerts influence and control, and I think there

21   is a message that needs to be sent here, Your Honor, both to

22   Mr. Scalza, who I have no doubt after three years will become

23   involved again in unions, and to the community at large, that

24   this kind of association cannot continue.  It doesn't benefit

25   the union membership.  It doesn't benefit the people at the

1  chocolate factory who had the right to consider the benefits

2  of two competing unions and then to pursue the union that best

3  suits them and best allows them to have their needs met.

4       THE COURT:  What company was that, what chocolate

5  factory?

6       MS. KASULIS:  I am not certain, Your Honor.

7       THE COURT:  It is just a chocolate factory in

8  Suffolk County?

9       MR. ROSEN:  Yes.

10      THE COURT:  Long Island?

11      MR. ROSEN:  Yes.  And -- there were two different --

12      THE COURT:  A competing union?

13      MS. KASULIS:  Unions.

14      THE COURT:  Choices?

15      MS. KASULIS:  Correct.

16      But this is -- unions are supposed to be about

17 benefiting the membership.  When organized crime is involved

18 in unions, the union members are not best served by their

19 membership.  That is the bottom line.

20      So in this instance, the government's position is

21 that a sentence within the six to 12-month range, whether

22 that's comprised of probation or some term of incarceration,

23 is appropriate.

24      THE COURT:  There is a difference between probation

25 and incarceration.

1        MR. ROSEN:  Right.

2        THE COURT:  I don't understand your point.  Is your

3   point that there should be some incarceratory sentence that's

4   within the guideline range?  Is that the government's

5   position?

6        MS. KASULIS:  The government's position is that if a

7   term of probation is appropriate here, and it may be, Your

8   Honor, that some form of home detention that goes along with

9   that term of probation would be appropriate in this instance.

10       THE COURT:  I see.  Okay.  Thank you.

11       MS. KASULIS:  I believe the guidelines actually call

12  for Your Honor, if a probationary sentence is imposed, but

13  there is some -- some component of detention, whether it's

14  detention in a community center or home detention or some sort

15  of detention along those lines that don't involve a prison.

16       THE COURT:  Thank you.

17       Anything else from you, Mr. Rosen?

18       MR. ROSEN:  No, sir.

19       THE COURT:  Can I hear from you?  Do you have

20  anything that you would like to say to the Court before I

21  sentence you, Mr. Scalza?

22       THE DEFENDANT:  Yes, Your Honor.

23       THE COURT:  Okay.  Please.

24       THE DEFENDANT:  I would just like the Court to know

25  that I am sincerely and truly remorseful for my conduct here

1  and mostly for the nightmarish ordeal that I have put my

2  family through.  The loss of my life's work and the

3  humiliation has cost me dearly and that the circumstances that

4  have me here before you, Your Honor, and what has transpired

5  is not indicative to who I truly am and that I can guarantee

6  you, Your Honor, I will never run afoul of the law again.

7                THE COURT:  Thank you.

8                THE DEFENDANT:  Thank you.

9                THE COURT:  The Court is extremely concerned about

10  the problem of organized crime infiltration into the work of

11  labor unions and also businesses because organized crime

12  doesn't draw a distinction between how it gains a foothold in

13  a business, putting someone at the cash register who is taking

14  part of the proceeds -- we've had that in this Court -- or a

15  labor union somehow benefiting from a decision that's made by

16  the membership to join a certain local of a certain union as

17  opposed to another.

18          So this is not just about labor unions, frankly.

19  This is about infiltration of organized crime getting a

20  foothold anywhere there is money to be sucked out of an

21  entity.  So no one should think that because this involved a

22  labor union it was somehow endemic only to a labor union

23  situation.  I just want to point that out.

24          The Court has the greatest respect for organized

25  labor and also for unorganized labor.  But organized labor

20

1    protects the rights of hard-working people to be properly

2    rewarded for their work and unfortunately, Mr. Scalza, you

3    made a big mistake in your association with someone else who

4    did not have those interests at the forefront of his

5    consideration, according to the government.  You have admitted

6    that you made a mistake, which is very important.  You have

7    had many years of creditable employment in the labor movement.

8    That counts for a lot in this Court.  You should be proud of

9    the work which you have done which has benefited hard-working

10   people.  So I don't want to minimize that either.  All of that

11   is very important.  But ordinarily, with this kind of an

12   offense, it is my view that jail time is appropriate.

13           There are other factors that Mr. Rosen points out,

14   and that I certainly take into account, having to do with the

15   lengths of your law-abiding service in the labor movement, the

16   length of your life, your good works, and so forth, that also

17   must be taken into account.

18           I think that in your case, despite the fact that I

19   am strongly disposed to some form of jail time, I am going to

20   try to organize a sentence in your case which will avoid your

21   going to jail.  But that is not to say that I am not deeply

22   distressed and concerned about this incident.  It is only an

23   incident, but it is a very serious incident.  I just wanted to

24   make that clear to you.

25           Are you ready to be sentenced?

1          THE DEFENDANT:  Yes, Your Honor.

2          MR. ROSEN:  Yes, Your Honor.

3          THE COURT:  I am imposing the following sentence.

4    The government tells me that I can impose a sentence of

5    probation because we are in Zone B.

6          MS. KASULIS:  That is correct.

7          THE COURT:  All right.  I am going to impose the

8    following sentence:

9          Three years of probation, the first six months of

10   which will be on home detention.  You will only be allowed to

11   leave home to go to the doctor, to go to religious services,

12   or to come to court, if you ever have to, or for some other

13   purpose that is approved by your Probation Officer.

14         I am going to impose a substantial fine on you of

15   $30,000 due immediately and payable at ten percent of your

16   gross monthly income while on supervised release.  Interest is

17   waived.

18         Make that $15,000, not 30,000.  It would be 30,000

19   but since you are not going to be able to work, I think

20   15,000, and just make it payable immediately.  You certainly

21   have the assets to pay the 15,000.  So you are going to pay

22   the 15,000 now.

23         Subject to the following other conditions of

24   probation:

25         Full financial disclosure to the Probation Officer.

1        You shall not possess a firearm, ammunition or

2   destructive device.

3        You shall not associate in person, through mail,

4   telephone or electronic communication, with any individual

5   with an affiliation to any organized crime groups, gangs or

6   other criminal enterprise pursuant but not limited to a

7   prohibition list provided by the United States Probation

8   Department, nor shall you frequent any establishment or other

9   locale identified by the Probation Department as a location

10  where these persons or groups may meet.

11       I am also imposing a condition that you engage in

12  500 hours of community service, either with young people with

13  disabilities or with the elderly.

14       In addition, there is a $100 special assessment,

15  which is mandatory.

16       You have the right to appeal your sentence to the

17  United States Court of Appeals for the Second Circuit if you

18  believe the Court has not properly followed the law in

19  sentencing you.  Your time to appeal is extremely limited and,

20  therefore, you should discuss with Mr. Rosen whether an appeal

21  would be worthwhile.

22       I note also that in your plea agreement you agreed

23  not to appeal or otherwise challenge the sentence that I

24  impose upon you if it is 12 months or below.  So your right to

25  appeal may be further limited by your contractual agreement

23

1    with the government in that regard.

2              Do you understand all that?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  Counts One and Thirteen are open.

5              MS. KASULIS:  Your Honor, the government moves to

6    dismiss those counts.

7              MR. ROSEN:  No objection.

8              THE COURT:  All right.  That motion is granted

9    without objection.

10             Is there anything further today from the government?

11             MS. KASULIS:  No, Your Honor.  The only thing is

12   that Your Honor is ordering a three-year ban?

13             THE COURT:  And, in addition, the government

14   separately orders -- if you want to give me an order to sign,

15   I will sign the order -- a three-year ban on any involvement

16   of the defendant with labor organizations, whether as a

17   member, an officer, or a consultant.

18             MS. KASULIS:  The government will submit such a

19   motion, Judge.

20             THE COURT:  All right.

21             MR. ROSEN:  Yes, Your Honor.

22             THE COURT:  Anything else from you, Mr. Rosen?

23             MR. ROSEN:  The only thing else, number one, I am

24   very grateful for Your Honor's consideration.  Is there a

25   possibility, since he's now losing his job, that there could

```
 1    be with home confinement the ability to go out and get a job

 2    and work or -- and even, for example, I don't want to use the

 3    wrong word, but like a curfew where he could see his

 4    grandchildren or even --

 5              THE COURT:  No.  It is home confinement.  It is

 6    either home confinement or jail.

 7              MR. ROSEN:  I got it.

 8              THE COURT:  So it's home confinement.

 9              MR. ROSEN:  I got it.

10              THE COURT:  Unless his wife tells me she'd rather

11    have him away for six months.  I don't see that.

12              MR. ROSEN:  I got it.

13              THE COURT:  But the point is, it is punishment.

14              MR. ROSEN:  Yes.

15              THE COURT:  It is punishment.  Let the family come

16    to him.

17              MR. ROSEN:  Got it.

18              THE COURT:  It is nice when they come to see

19    grandpa.

20              MR. ROSEN:  I can attest to that.

21              THE COURT:  You see, you are lucky.  You've got

22    grandchildren.

23              MR. ROSEN:  Yes, sir.

24              THE COURT:  I am still waiting.

25              MR. ROSEN:  Okay.
```

GR        OCR        CM        CRR        CSR

1          THE COURT:  Okay.  I am in no hurry but I am

2   waiting.  I don't want you to go back to my kids and tell

3   them.

4          MR. ROSEN:  No, I won't.

5          THE COURT:  That's the point.

6          MR. ROSEN:  I got it.

7          THE COURT:  The point is, it is punishment.  It is a

8   form of punishment that is not so jarring as other forms of

9   punishment, because you made your arguments and your

10  submissions and the defendant has shown his remorse and the

11  Court has heard those messages and the outcome is what it is.

12         MR. ROSEN:  Thank you.

13         THE COURT:  Good luck.

14         MR. ROSEN:  Thank you.

15         MS. KASULIS:  Thank you, Your Honor.

16         THE COURT:  For the home confinement, voice

17  verification will be sufficient, as opposed to electronic

18  monitoring.

19         MR. ROSEN:  Thank you.

20         THE COURT:  You do have a hardwired phone in your

21  house, do you not?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  All right.  That's what they will use.

24         MR. ROSEN:  Okay.  Thank you.

25         MS. KASULIS:  Thank you, Judge.  (Matter concludes.)

C E R T I F I C A T I O N

   I certify that the foregoing is a correct transcript

from the record of proceedings in the above-entitled

matter.

_____

s/Gene Rudolph, Official Court Reporter

Date:  July 2, 2014

GR      OCR      CM      CRR      CSR